## PECK et al. *v.* BURWELL.

(*Supreme Court, General Term, Third Department.*　February, 1888. )

NEGOTIABLE INSTRUMENTS—CONSIDERATION—EXECUTION OF NOTE AS AGENT FOR DECEDENT'S ESTATE—PERSONAL LIABILITY OF MAKER.

Where it appears that defendant in an action on a promissory note had signed the note for the purpose of renewing an old note held by plaintiffs against the estate of defendant's deceased father, simply as agent of such estate, under an agreement that the old note should be delivered up, which has not been done, and there is nothing to show that plaintiffs parted with anything of value, or that defendant has received or will receive anything from such estate, such defendant may, for the purpose of proving a want of consideration, show that he was an accommodation maker, and was not to be held personally liable.[1]

Appeal from circuit court.

Action on a promissory note by Daniel Peck and others against the defendant Charles W. Burwell. Judgment for defendant, and plaintiffs appeal.

Argued before LEARNED, P. J., and INGALLS and LANDON, JJ.

*S. & L. M. Brown,* for appellants.　*Waldo & McLaughlin,* for respondent.

INGALLS, J.　This action was instituted by the plaintiffs as the payees, against the defendant as the maker, of a promissory note, of which the following is a copy: "$375.　SCHROON LAKE, February 11, 1887.　Four months after date I promise to pay to the order of D. Peck & Co., three hundred and seventy-five dollars, at the First National Bank, Glenns Falls.　Value received. C. W. BURWELL, Agent."　The defense interposed at the trial was, in substance, that the note was executed by the defendant under an agreement between the parties, maker and payees, that the maker should sign the note as agent, for the accommodation of the payees, but that the maker should not become personally liable thereupon.　The plaintiffs, represented by Walter M. Peck, who was one of the partners of the firm of D. Peck & Co., applied to the defendant to obtain payment of a promissory note which they held against the estate of John D. Burwell, deceased, who died intestate, and as to whose estate no letters of administration had been granted.　The defendant is the son of the intestate.　Two witnesses only were examined upon the trial, and each gave his version of the transaction.　Charles W. Burwell, the defendant, was first examined, and, after stating the time and place when and where the interview between him and Mr. Peck occurred, and the subject thereof, proceeded as follows: "So I told him it would be impossible for us to pay the note at that time.　Then we talked about some way of arranging the note, so they could carry it on in the bank, as he said, and have it against the estate finally; and he asked me if there had been any letters of administration taken out, and I told him, 'No;' and he says: 'There is probably not a great deal of property, and I don't see any reason for your taking out letters of administration.'　He said there would be quite an expense to that, and said: 'I think you could do the business as agent for the estate and the heirs, and keep it along until you could finally pay and settle.'　Before he spoke about doing the business as agent, he asked me if I could not give him a note for this amount, and I told him, 'No; I could not hardly;' for I didn't think it was for me to settle individually.　He wanted to know if I and my brother could not, or we could not settle it up some way.　I told him I didn't think we could.　He said if I would sign a note as C. W. Burwell, agent, to take up this note of my father's, he would be satisfied with it, and that note they could use in the bank.　I says to him: 'If I should sign a note like this to you, would that make me personally liable?'　He says: 'Why, of course not.　All we want of it is to have the note renewed, so as to carry it along, and have it to show up.'　So I

---

[1] That want of consideration constitutes a good defense to an action on a promissory note between the original parties, see Braly v. Henry, (Cal.) 12 Pac. Rep. 623, and note.

agreed to that, and signed the note in that way, for $375, to renew this other note. The note in suit is that note. I don't know whether I stated all that I remember of that talk; it was quite a while ago. He said if I would sign in that way, it would be an admission that the estate owed so much. He said he would return the other note, my father's. He has not done it." Walter M. Peck was then examined as a witness, and stated the interview as follows, so far as it related to the conversation in regard to executing the note by defendant: "*Question.* State what the conversation was. *Answer.* I saw Mr. Burwell at night, and asked him if he knew anything about his father's business; if he knew we had some paper of his father that was maturing. He said he knew something about it, and knew we held two notes. I told him one of them was maturing soon, and we would like them to pay it or fix it up. He told me they had no money. Their expenses had been very heavy, and they could not pay it; and I suggested that we take a new note for this note, and that his mother should sign it, and the three boys should indorse it. He said, 'No;' that they didn't want to do that, but that he had been getting up papers, and he was to be appointed as the agent, and he would sign this note for $375 as agent; and that was the way they were going to do the business, and that the papers were made out, but not signed at that time. I drew up the note, and he signed it, and paid me the discount. That is all that occurred, I think, about this note. I was there over night, and this was all the business I did about this. I supposed I had got a good piece of paper. I don't know but we spoke about the second note, fixing it up in that way. I don't remember having any talk about letters of administration, and I don't think I had any. He said the papers were drawn for him to act as agent,—agent for the estate,—I understood. He said his father had considerable paper out, and they were going to fix it up in that way. I didn't tell him it would be expensive to take out letters of administration. I didn't advise him not to take them out. He didn't ask me if he would be liable on such a note, nor did I tell him he would not be. I did not tell him that I did not see any use in taking out letters of administration." Upon the cross-examination, the witness stated as follows: "*Question.* Did you swear that you supposed it bound the estate? *Answer.* Yes, sir. *Q.* Do you mean to say that you didn't know whether it bound him? *A.* That was a question of law I didn't know. I supposed this bound the estate, and that was why the word 'agent' was written on the note. Not a thing was said about his becoming personally liable. I am positive about that."

The evidence was so far contradictory as to present a fair question for the consideration of the jury, and the court committed no error in thus submitting the same, provided the defendant's theory in regard to the legal effect of such agreement, if established, can be regarded sound. This action being between the maker and payees of the note, the consideration became a legitimate subject of inquiry. The note, according to the defendant's theory, which he claims to have supported by the evidence, and confirmed by the verdict of the jury, was given purely for the accommodation of the plaintiffs. Assuming such to be the case, we are convinced that the defense was available to the defendant, because, if true, as between the immediate parties to the note, there was no consideration therefor. The parties could make such an agreement; and, if they did so, certainly there would be no justice in holding the defendant liable for the debt. The evidence discloses that the note which was given by the father of the defendant has not been surrendered, but continues a claim against his estate, to be collected therefrom, provided there shall be sufficient for that purpose. It does not appear that the plaintiffs parted with anything of value which could constitute a consideration for the defendant's signature to the note in question. It is not shown that the defendant has received, or is likely to receive, any amount from the estate of his father. Keeping in mind the facts that the agreement relied upon by the defendants was entered into at the time the note was executed, and between the

defendant as maker and the plaintiffs as payees, and for the accommodation of the latter, and that the rights of no third party, who has advanced money upon the strength of the defendant's signature, is involved in this controversy, and that the word 'agent' was appended to the defendant's signature, we conclude that the defense insisted upon at the trial by the defendant was admissible, and available to him, for the purpose of showing that there was no consideration for the note in question as between the parties to this action. *Murphy* v. *Keyes*, 39 N. Y. Super. Ct. 18; Story, Bills, § 187. The author says: "The general rule is that the total or partial want or failure of consideration, or the illegality of consideration, may be insisted upon as a defense or a bar between any of the immediate parties to a contract. * * * Thus, for example, it is a good defense or bar to an action, between those parties, that the bill is a mere accommodation bill." Story, Prom. Notes, § 190; 1 Chit. Bills, 68, 69; *Dowe* v. *Schutt*, 2 Denio, 621. The court remarks: "An accommodation note is invalid in the hands of a person for whose benefit it was made." *Glenn* v. *Burrows*, 37 Hun, 602–607. If this action was between the defendant and a third party, who had parted with value for the note, the case would be widely different. *Bank* v. *Tisdale*, 18 Hun, 151. Justice LEARNED remarks: "The meaning of the word 'accommodation paper' is well known. Where such paper is made and lent, the maker can defend against the borrower on the ground of want of consideration." In that case, however, the note had been transferred, and the action was brought by a holder, who had parted with value upon the faith of the signature; and it was held that, as between such parties, the defense of want of consideration was not available. *Hargar* v. *Worrall*, 69 N. Y. 370; *Bank* v. *Crow*, 60 N. Y. 85; *Grant* v. *Ellicott*, 7 Wend. 227. The cases referred to recognize the distinction before stated. The purpose for which the evidence was offered by the defendant, and received by the court, was to show the circumstances under which the note was executed by the defendant, and accepted by the plaintiffs, with the view to establish as a fact that, as between these parties, there was no consideration for the note, for the reason that the defendant executed the same at the request of the plaintiffs, and for their accommodation simply. In a controversy between the original parties to a note, it is competent to show for what purpose the same was executed, and to inquire into the consideration, and to show the relation which a party bore to the contract, whether as principal or surety. *Miller* v. *McKenzie*, 95 N. Y. 575; *Hubbard* v. *Gurney*, 64 N. Y. 458. The judge in his charge submitted to the jury the real question involved, and clearly and fairly presented the same for their consideration, as a question of fact for them to determine. The evidence given at the trial was such that the verdict should be sustained. *Cheney* v. *Railroad Co.*, 16 Hun, 415. We have examined the exceptions to the charge of the judge, and to his refusals to charge as requested by the plaintiffs, and discover no material error which calls for a reversal of the judgment; and the same must be affirmed, with costs.